**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| THE CHICAGO BEARS FOOTBALL CLUB, INC. and NATIONAL FOOTBALL LEAGUE MANAGEMENT COUNCIL,<br><br>              Plaintiffs,<br><br>        -against-<br><br>MICHAEL HAYNES, JOE ODOM, CAMERON WORRELL and NATIONAL FOOTBALL LEAGUE PLAYERS ASSOCIATION,<br><br>             Defendants. | Case No.:  11-cv-02668<br><br>Judge:  Hon. Elaine E. Bucklo<br><br>Magistrate Judge:  Hon. Michael T. Mason |

**PLAINTIFFS' OPENING BRIEF IN SUPPORT OF**
**MOTION TO CONFIRM ARBITRATION AWARD**

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................................1

II.    STATEMENT OF UNDISPUTED FACTS .....................................................3

       A.     The Parties ............................................................................................ 3

       B.     The Players' Employment Contracts With The Bears ........................... 3

       C.     The Players' Claims For California Workers' Compensation Benefits.................. 4

       D.     The Consolidated Grievances Filed By The Bears And The NFLMC .................. 5

       E.     The Arbitration Award.......................................................................... 5

III.   STANDARD OF REVIEW .............................................................................6

IV.    ARGUMENT ...................................................................................................8

       A.     The Award Should Not Be Vacated For Purported Violations Of California Law And Policy, Federal Labor Law, Or The U.S. Constitution. .......................... 8

             1.     There is no "explicit, well-defined" California law "that specifically militates against" the Award. .................................................... 10

                   (a)     California's statutes do not categorically preclude choice-of-law or choice-of-forum provisions in the workers' compensation context.................................................... 10

                   (b)     *Alaska Packers* fails to support Defendants' efforts to jettison their agreement to resolve their workers' compensation disputes in Illinois under Illinois law.................... 13

             2.     Federal labor law poses no obstacle to the Award.................................. 15

             3.     The U.S. Constitution is no impediment to the Award's enforcement of the parties' choice-of-law and choice-of-forum agreements. ............... 16

       B.     An Award Ignoring The Parties' Choice Of Illinois Law And An Illinois Forum Would Violate Federal Labor Policy, As Well As Illinois Law And Policy. ......................................................................................... 18

V.     DEFENDANTS' REQUEST FOR DECLARATORY RELIEF SHOULD BE DENIED. ................................................................................20

VI.    CONCLUSION................................................................................................22

## TABLE OF AUTHORITIES

Page(s)

FEDERAL CASES

*Advance Transp. Co. v. Int'l Bhd. Of Teamsters, Local No. 710*,
    946 F. Supp. 580 (N.D. Ill. 1996) ..........................................................................8

*Alaska Packers Ass'n v. Indus. Accident Comm'n of Cal.*,
    294 U.S. 532 (1935)................................................................................. passim

*Allstate Ins. Co. v. Hague*,
    449 U.S. 302 (1981).............................................................................2, 16

*Cleveland v. Porca Co.*,
    38 F.3d 289 (7th Cir. 1994) ..........................................................................6

*Doron Precision Systems, Inc. v. FAAC, Inc.*,
    423 F. Supp. 2d 173 (S.D.N.Y. 2006)..........................................................5

*Eastern Assoc. Coal Corp. v. United Mine Workers of Am.*,
    531 U.S. 57 (2000).........................................................................10, 11, 18

*EEOC v. Indiana Bell Tel. Co.*,
    256 F.3d 516 (7th Cir. 2001) ..........................................................................9

*George Watts & Son, Inc. v. Tiffany & Co.*,
    248 F.3d 577 (7th Cir. 2001) ..........................................................................9, 10

*Halim v. Great Gatsby's Auction Gallery, Inc.*,
    516 F.3d 557 (7th Cir. 2008) ..........................................................................9

*IDS Life Ins. Co. v. Royal Alliance Associates, Inc.*,
    266 F.3d 645 (7th Cir. 2001) ..........................................................................21

*Int'l Union of Operating Eng'rs, Local 139, AFL-CIO v. J.H. Findorff & Son, Inc.*,
    393 F.3d 742 (7th Cir. 2004) ..........................................................................7

*Jonites v. Exelon Corp.*,
    522 F.3d 721 (7th Cir. 2008) ..........................................................................9

*Local 15, Int'l Bhd. of Electrical Workers, AFL-CIO v. Exelon Corp.*,
    495 F.3d 779 (7th Cir. 2007) ..........................................................................1, 9

*MACTEC, Inc. v. Gorelick*,
    427 F.3d 821 (10th Cir. 2005) ..........................................................................21

ii

*Miron Constr. Co., Inc. v. Int'l Union of Operating Eng'rs, Local 139*,
    44 F.3d 558 (7th Cir. 1995) .......................................................................................18

*Montgomery Ward & Co., Inc. v. Warehouse, Mail Order, Office, Tech. & Prof. Emps.
Union*,
    911 F. Supp. 1094 (N.D. Ill. 1995) ............................................................................7

*Morgan v. Bank of Waukegan*,
    804 F.2d 970 (7th Cir. 1986) .....................................................................................10

*Nat'l Football League Players Ass'n v. Nat'l Football League Management Council*,
    No. 10CV1671, 2011 WL 31068 (S.D. Cal. Jan. 5, 2011) .....................................2, 15, 16, 18

*Nat'l Football League Players Ass'n v. Office & Prof'l Emps. Int'l Union, Local 2*,
    Nos. 96-7245, 96-7268, 1997 WL 362761 (D.C. Cir. May 6, 1997).......................................21

*Nat'l Wrecking Co. v. Int'l Bhd. of Teamsters, Local 731*,
    990 F.2d 957 (7th Cir. 1993) ................................................................................7, 21

*Nationwide Mut. Ins. Co. v. Flynn*,
    704 F. Supp. 592 (E.D. Pa. 1988) .............................................................................21

*Nevada v. Hall*,
    440 U.S. 410 (1979).................................................................................................17

*Pacific Employers Ins. Co. v. Industrial Acc. Comm'n of California*,
    306 U.S. 493 (1939).................................................................................................17

*Prostyakov v. Masco Corp.*,
    513 F.3d 716 (7th Cir. 2008) .....................................................................................20

*Smurfit Newsprint Corp. v. Southeast Paper Mfg. Co.*,
    368 F.3d 944 (7th Cir. 2004) .....................................................................................19

*Sun Oil Co. v. Wortman*,
    486 U.S. 717 (1988).................................................................................................17

*T. McGann Plumbing, Inc. v. Chicago Journeymen Plumbers' Local 130, U.A.*,
    522 F. Supp. 2d 1009 (N.D. Ill. 2007) ............................................................................1, 7, 8

*Trust v. Crowley*,
    No. 09 C 5314, 2010 WL 748201 (N.D. Ill. Feb. 26, 2010)......................................................5

*United States ex rel. Lee v. Rowe*,
    446 F. Supp. 1039 (N.D. Ill. 1978) ..........................................................................15, 16

*Wackenhut Corp. v. Local 1, Service Empls. Int'l Union*,
    No. 05 C 6566, 2006 WL 2051333 (N.D. Ill. July 17, 2006) ................................................8

*Wheatland Contractors, Inc. v. Int'l Union of Operating Eng'rs Local Union 150,*
    *AFL-CIO,*
    No. 06 C 0683, 2007 WL 551580 (N.D. Ill. Feb. 16, 2007)................................6, 7

*Williams v. Romano Bros. Beverage Co.,*
    939 F.2d 505 (7th Cir. 1991) ............................................................................1, 7

S\ TATE\ C\ ASES

*1-800-Got Junk? LLC v. Superior Court,*
    189 Cal. App. 4th 500 (2010) ................................................................................12

*Alaska Packers Ass'n v. Indus. Accident Comm'n of Cal.,*
    1 Cal. 2d 250 (1934) ..........................................................................................2, 14

*Benguet Consol. Min. Co. v. Indus. Accident Comm'n,*
    36 Cal. App. 2d 158 (1939) ...................................................................................14

*Bowen v. Workers' Comp. Appeals Bd.,*
    73 Cal. App. 4th 15 (1999) ....................................................................................14

*Calanca v. D&S Mfg. Co.,*
    510 N.E.2d 21 (Ill. Ct. App. 1987) ......................................................................20

*Doe v. City of Los Angeles,*
    42 Cal. 4th 531 (2007) ...........................................................................................10

*Hall v. Sprint Spectrum L.P.,*
    376 Ill. App. 3d 822 (2007) ...................................................................................19

*Old Republic Ins. Co. v. Ace Prop. & Casualty Ins. Co.,*
    389 Ill. App. 3d 356 (2009) ...................................................................................19

*Shields v. K.A.T. Transp.,*
    53 P. 3d 1242 (Kan. Ct. App. 2002) ......................................................................11

*Welch v. Nightingale Nurses, LLC,*
    No. 07-08-0305-CV, 2009 WL 1531497 (Tex. Ct. App. June 2, 2009) ............11, 12

S\ TATE\ S\ TATUTES

Cal. Lab. Code
    § 2804....................................................................................................................10, 12
    § 5000............................................................................................................... passim

Kansas Statute Annotated
    44-543 ....................................................................................................................11

Codes

29 U.S.C. § 185 et seq....................................................................................................1, 3, 20, 21

Other Authorities

10B Wright & Miller, Federal Practice and Procedure § 2758 (3d ed. 1998) ..............................20

## I.     <u>INTRODUCTION</u>

This is a straightforward motion to confirm an arbitration award ("the Award") upholding contractual agreements between The Chicago Bears Football Club, Inc. ("the Bears") and three of its former professional football players: Michael Haynes, Joe Odom, and Cameron Worrell (collectively, "the Players").  The Award enforced agreements stating that any workers' compensation disputes must be decided in an Illinois forum and under Illinois law.  The Players and their union, the National Football League Players Association ("NFLPA") (collectively, Defendants"), nevertheless claim that they are somehow entitled to *California* workers' compensation benefits.

As a threshold matter, it is well-established in this Circuit that judicial review of labor arbitration awards under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 et seq. ("LMRA"), is "very limited."  *Williams v. Romano Bros. Beverage Co*., 939 F.2d 505, 507 (7th Cir. 1991).  "[T]he losing party at a labor arbitration cannot circumvent the arbitrator's decision and relitigate its case in the courts."  *T. McGann Plumbing, Inc. v. Chicago Journeymen Plumbers' Local 130, U.A*., 522 F. Supp. 2d 1009, 1014 (N.D. Ill. 2007).  An arbitration award can be overturned only if it runs counter to clearly defined, explicit law.  *Local 15, Int'l Bhd. of Electrical Workers, AFL-CIO v. Exelon Corp*., 495 F.3d 779, 784 (7th Cir. 2007).  Arbitrator Townley's Award does not.

First, the Award does not violate California law or policy.  The California Labor Code does not prohibit choice-of-law or choice-of-forum provisions.  Moreover, the *Alaska Packers*

1

decisions[1] in no way suggest that agreements to apply the workers' compensation law of a state other than California are void when made outside of California.

Second, the Award does not violate federal labor policy. While unions and employers are generally precluded from bargaining for terms that violate minimum state labor standards, the terms of the contracts here do not violate any California labor standards.

Third, the Award does not violate the Full Faith and Credit Clause, which does not affect the parties' choice of an Illinois forum. As the forum state, Illinois may constitutionally apply its own laws given its "legitimate interests" in the litigation, *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 322 (1981) (Stevens, J., concurring) – it is where the Players' contracts were entered into, where the Bears are located, and where the Players performed the large majority of their professional services.

Furthermore, even if some policy were arguably violated, the U.S. Supreme Court has commanded courts to consider competing policies – including the federal policy favoring the resolution of disputes over collectively-bargained agreements through arbitration and Illinois' strong policies favoring the enforcement of choice-of-law and choice-of-forum provisions.

Under comparable facts and circumstances, a federal district court in California recently confirmed an arbitration award upholding an agreement between the Tennessee Titans and one of its players to apply Tennessee law to any workers' compensation disputes. *Nat'l Football League Players Ass'n v. Nat'l Football League Management Council*, No. 10CV1671, 2011 WL 31068 (S.D. Cal. Jan. 5, 2011) ("*Matthews*").[2] The NFLPA and the player in that case, represented by the same counsel, raised the exact same arguments that Defendants do here –

---

[1] *Alaska Packers Ass'n v. Indus. Accident Comm'n of Cal.*, 1 Cal. 2d 250 (1934); *Alaska Packers Ass'n v. Indus. Accident Comm'n of Cal.*, 294 U.S. 532 (1935).

[2] The *Matthews* plaintiffs are appealing the district court's decision.

namely, that California law, federal labor law, and the Full Faith and Credit Clause barred enforcement of the parties' agreement to resolve their disputes under the law of a state other than California. The federal court rejected all of these arguments, and this Court should do the same.

Finally, Defendants' request for declaratory relief is nothing more than an attempt to end run the limits that section 301 imposes on judicial review of arbitral awards. The Award also has res judicata effect, and bars Defendants' claim for declaratory judgment.

## II.    STATEMENT OF UNDISPUTED FACTS

### A.    The Parties

The Bears are an NFL member club with its principal place of business in Lake Forest, Illinois. (Civil Action Complaint ("Complaint") ¶ 3 [Dkt. # 1].) NFL Players Haynes, Odom, and Worrell entered into contracts with the Bears between 2003 and 2008. (Award [Exh. B to Complaint] at 1.)

All NFL players are bound by a collective bargaining agreement ("CBA") negotiated between the National Football League Management Council ("NFLMC"), on behalf of all NFL member clubs, and the NFLPA, on behalf of all NFL players. (Complaint ¶ 7.) The CBA incorporates, among other things, the standard player contract that all players enter into with an NFL Club. (*Id.*, ¶ 9 & Exh. A, pp. 22, 27-35.) The CBA provides that all disputes involving the interpretation of, application of, or compliance with the CBA or a player contract be submitted to final and binding arbitration before a mutually selected arbitrator. (*Id.*, ¶ 8.)

### B.    The Players' Employment Contracts With The Bears

The Players and the Bears entered into employment contracts in Illinois, and the Players "performed their Contracts by playing for the Club in Illinois." (Award at 27.) The Players and the Bears acknowledged that their contracts were "negotiated and executed in Illinois," and each

contract explicitly provides that it is "made under and shall be governed by the laws of the State of Illinois." (*Id.* at 3, 24.)

With respect to workers' compensation disputes, all the contracts state:

> [S]hould any dispute, claim or cause of action . . . arise concerning rights or liabilities arising from the relationship between the Player and the Club, *the parties hereto agree that the law governing such dispute shall be the law of the State of Illinois. Furthermore, the exclusive jurisdiction for resolving injury related claims shall be the Illinois Industrial Commission of the State of Illinois, and in the case of Workers Compensation claims the Illinois Workers Compensation Act shall govern.*

(*Id.* (emphasis added).) In keeping with that agreement to resolve workers' compensation disputes in Illinois pursuant to Illinois law, two of the Players sought and obtained workers' compensation benefits in Illinois. (Award at 8.)

## C.     The Players' Claims For California Workers' Compensation Benefits

Notwithstanding the Players' explicit agreement to pursue workers' compensation claims exclusively in Illinois and under Illinois law, the Players filed claims for workers' compensation benefits in 2009 and 2010 with the California Workers' Compensation Appeals Board ("WCAB"), seeking benefits under the California Workers' Compensation Act. (Complaint ¶ 12.) None of the Players alleged that he had sustained any particular injury in California, and the Players practiced and played in Illinois more than in any other state. In fact, during the time that the Players were employed by the Bears, the Bears played only four games in California –

approximately three percent of the total regular and pre-season games they played during that period.[3]

### D.    The Consolidated Grievances Filed By The Bears And The NFLMC

The Bears and the NFLMC (collectively, "Plaintiffs") filed a grievance pursuant to Article IX of the CBA against Haynes on November 11, 2009, and against Odom on April 28, 2010, claiming that their California workers' compensation claims breached their agreements to seek workers' compensation benefits exclusively in an Illinois forum and under Illinois law. (Complaint ¶ 13.)  On May 4, 2010, the Bears consolidated their grievances against Haynes and Odom and amended the grievance to include Worrell, seeking an order requiring all three Players to cease and desist from pursuing their workers' compensation claims against the Bears in California and under California law.  (*Id*.)

The NFLPA denied the grievance, maintaining that any Illinois choice-of-law or choice-of-forum provision is void and unenforceable under California and federal law because the right to California workers' compensation benefits is unwaivable.  (Award at 11-13.)

### E.    The Arbitration Award

On June 3, 2010, an arbitration hearing was held in Lake Forest, Illinois before Arbitrator Rosemary Townley.  (Complaint ¶ 15.)  All parties were represented by counsel.  (*Id*.)

On April 21, 2011, Arbitrator Townley issued a final written Award stating that the Players are bound by their agreements to pursue any workers' compensation claims in Illinois,

---

[3] The NFL respectfully requests that this Court take judicial notice of the 2003-2008 game schedules publicly posted on the NFL's website, http://www.nfl.com/teams/chicagobears/schedule?team=CHI&id.  *See, e.g*., *Doron Precision Systems, Inc. v. FAAC, Inc*., 423 F. Supp. 2d 173, 179 n.8 (S.D.N.Y. 2006) (holding that "a court may take judicial notice of information publicly announced on a party's website as long as the website's authenticity is not in dispute and 'it is capable of accurate and ready determination'") (quoting Fed. R. Evid. 201(b)), quoted in *Trust v. Crowley*, No. 09 C 5314, 2010 WL 748201, at *3 n.1 (N.D. Ill. Feb. 26, 2010).

under Illinois law. (Award at 18-19.) Arbitrator Townley found that the Bears are located in Illinois, and that "the Players executed and performed their Contracts by playing for the Club in Illinois." (*Id.* at 27.) She further found that there is no evidence "that the Players would be deprived of their opportunity to file for workers' compensation benefits or be expected to waive such benefits; rather, they are being held to their contractual promise to apply for the benefits in the forum of the State of Illinois." (*Id.* at 28.) In keeping with these findings, Arbitrator Townley ordered that the Players "cease and desist the pursuit of their Workers' Compensation claims in the State of California through the withdrawal of such claims before the applicable tribunal." (*Id.* at 29.)

The NFLMC and the Bears filed their Complaint to confirm and enforce the Award on April 21, 2011. On May 20, 2011, Defendants filed their "Answer, Motion and Counterclaim" ("Counterclaim") (Dkt. # 14).[4] The parties then agreed to, and this Court approved, a coordinated briefing schedule that allows the Court to simultaneously decide Defendants' motion to vacate and Plaintiffs' motion to confirm (Dkt. # 24).

## III.    STANDARD OF REVIEW

"The Supreme Court has long held that national policy favors the resolution of labor disputes through arbitration." *Wheatland Contractors, Inc. v. Int'l Union of Operating Eng'rs Local Union 150, AFL-CIO*, No. 06 C 0683, 2007 WL 551580, at *2 (N.D. Ill. Feb. 16, 2007) (citing *United Steelworkers v. Am. Mfg. Co.*, 363 U.S. 564 (1960); *United Steelworkers v.*

---

[4] Defendants insist in their Counterclaim that the Complaint "is procedurally improper" because it was filed under the LMRA, rather than the Federal Arbitration Act ("FAA"), but they are mistaken. It is well-established in this Circuit that "'in seeking to confirm an arbitration award created by virtue of a collective bargaining agreement, recourse is to the LMRA, not the FAA.'" *Cleveland v. Porca Co.*, 38 F.3d 289, 296 n.5 (7th Cir. 1994) (quoting *Martin v. Youngstown Sheet & Tube Co.*, 911 F.2d 1239, 1244 (7th Cir. 1990)).

*Warrior & Gulf Nav. Co.*, 363 U.S. 574 (1960); *United Steelworkers v. Enter. Wheel & Car Corp.*, 363 U.S. 593 (1960)).  "One of the outgrowths of this dictate is that judicial review of labor arbitration awards is *extremely limited*," as "'the federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards.'" *Wheatland Contractors*, 2007 WL 551580, at *2 (quoting *Enter. Wheel & Car*, 363 U.S. at 596) (emphasis added); *see also Williams*, 939 F.2d at 507 ("Judicial review of a labor arbitration award is very limited."); *Montgomery Ward & Co., Inc. v. Warehouse, Mail Order, Office, Tech. & Prof. Emps. Union*, 911 F. Supp. 1094, 1099-1100 (N.D. Ill. 1995) (holding that consistent with the "national policy favor[ing] the resolution of labor disputes through arbitration," "the scope of judicial review of labor arbitration awards is extremely limited").  "Arbitrators do not act as junior varsity trial courts where subsequent appellate review is readily available to the losing party." *Nat'l Wrecking Co. v. Int'l Bhd. of Teamsters, Local 731*, 990 F.2d 957, 960 (7th Cir. 1993).

"[A] federal court must enforce the award 'as long as it draws its essence from the collective bargaining agreement.' . . . As long as the arbitrator even arguably construed or applied the contract and acted within the scope of his authority, a court cannot overturn the arbitration award." *T. McGann Plumbing*, 522 F. Supp. 2d at 1014 (quoting *Cuna Mut. Ins. Soc'y v. Office & Prof'l Empls. Int'l Union*, 443 F.3d 556, 561 (7th Cir. 2006)); *see also Williams*, 939 F.2d at 507 ("[W]e uphold [labor arbitration] awards provided that the arbitrator attempted to interpret the collective bargaining agreement rather than to apply his own ideas of right and wrong.").  "It is not the Court's job to determine if an arbitrator erred in interpreting a labor contract, *even if a significant error exists*." *T. McGann Plumbing*, 522 F. Supp. 2d at 1014 (emphasis added); *see also Int'l Union of Operating Eng'rs, Local 139, AFL-CIO v. J.H.*

7

*Findorff & Son, Inc.*, 393 F.3d 742, 745 (7th Cir. 2004) (recognizing that "'if an arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, *the fact that a court is convinced he committed serious error does not suffice to overturn his decision*'") (quoting *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001)) (emphasis added).

Ultimately, "[t]he Court resolves any reasonable doubt over the issue in favor of enforcing the award." *T. McGann Plumbing*, 522 F. Supp. 2d at 1014; *Advance Transp. Co. v. Int'l Bhd. Of Teamsters, Local No. 710*, 946 F. Supp. 580, 581 (N.D. Ill. 1996) ("Awards will be vacated only where there is no logical interpretive route between the collective bargaining agreements and the awards. Courts must resolve disputes in favor of enforcement where there exists any reasonable amount of doubt regarding whether the award contains such a logical connection.").

## IV.  ARGUMENT

### A.  The Award Should Not Be Vacated For Purported Violations Of California Law And Policy, Federal Labor Law, Or The U.S. Constitution.

Defendants do not allege that the arbitrator acted outside the scope of her authority or that the Award does not "draw its essence" from the CBA and the Players' contracts. Rather, the crux of their Counterclaim is that the Award "contravenes important public policies and manifestly disregards the law" – specifically, California Labor Code section 5000, federal labor law, and the U.S. Constitution. (Counterclaim ¶66; *see also id*., ¶¶ 31-65.)

In this Circuit, courts *rarely* vacate an arbitration award on the basis of a public policy violation or an arbitrator's manifest disregard of the law. As to the argument that an award is contrary to public policy, "the exception is a *narrow* one." *Wackenhut Corp. v. Local 1, Service Empls. Int'l Union*, No. 05 C 6566, 2006 WL 2051333, at *5 (N.D. Ill. July 17, 2006) (emphasis

added); *see also Local 15, Int'l Bhd. of Elec. Workers*, 495 F.3d at 784 ("'General appeals to

"public policy" do not permit a court to upset an arbitral award.'") (quoting *Baxter Int'l, Inc. v.*

*Abbott Labs.*, 297 F.3d 544, 547 (7th Cir. 2002)).  The "manifest disregard" exception to the

confirmation of arbitration awards is equally limited:

> If "manifest disregard" means only a legal error . . . then
> arbitration cannot be final.  Every arbitration could be followed by
> a suit, seeking review of legal errors, serving the same function as
> an appeal within a unitary judicial system.  That would prevent the
> parties from achieving the principal objectives of arbitration: swift,
> inexpensive, and conclusive resolution of disputes.  If "manifest
> disregard" means not just any legal error but rather a "clear" error
> (one about which there is, in [plaintiff's] language, "no reasonable
> debate"), again arbitration could not be final, and the post-
> arbitration litigation would be even more complex than a search for
> simple error – for how blatant a legal mistake must be to count as
> "clear" or "manifest" error lacks any straightforward answer.

*George Watts & Son, Inc. v. Tiffany & Co.*, 248 F.3d 577, 579 (7th Cir. 2001); *Halim v. Great*

*Gatsby's Auction Gallery, Inc.*, 516 F.3d 557, 563 (7th Cir. 2008) ("Factual or legal error, no

matter how gross, is insufficient to support overturning an arbitration award.") (citing *IDS Life*

*Ins. Co. v. Royal Alliance Associates, Inc.*, 266 F.3d 645, 650 (7th Cir. 2001)).

To succeed on either a public policy or a manifest disregard challenge, the law that was

allegedly violated or ignored must be clear and well-defined.  *Local 15, Int'l Bhd. of Elec.*

*Workers*, 495 F.3d at 784 ("[W]hen a court bars enforcement of an arbitration award on the basis

of public policy, that public policy must be clearly defined."); *Jonites v. Exelon Corp.*, 522 F.3d

721, 726 (7th Cir. 2008) ("Where a governing legal principle is well defined, explicit, and clearly

applicable to the case . . . [the arbitrator's] disregard of it is 'manifest.'") (internal quotations and

citations omitted).

As discussed below, the Award here does *not* "require[] conduct 'contrary to an explicit,

well-defined, and dominant public policy, as ascertained by reference to positive law.'"  *EEOC*

*v. Indiana Bell Tel. Co.*, 256 F.3d 516, 524 (7th Cir. 2001) (quoting *Eastern Assoc. Coal Corp. v. United Mine Workers of Am.*, 531 U.S. 57, 63 (2000)). Equally clear, Arbitrator Townley did not manifestly disregard the law by "requiring the parties to violate the law." *George Watts*, 248 F.3d at 581. The Award thus should be confirmed.

1.    <strong>There is no "explicit, well-defined" California law "that specifically militates against" the Award.</strong>

(a)    <strong>California's statutes do not categorically preclude choice-of-law or choice-of-forum provisions in the workers' compensation context.</strong>

While California law prohibits contracts that "exempt the employer from liability" for workers' compensation or "waive" benefits, Cal. Lab. Code §§ 5000, 2804,[5] it nowhere outlaws choice-of-law provisions calling for the application of another state's law or choice-of-forum provisions calling for the resolution of a dispute in another state. California's legislature easily could have included a prohibition against choice-of-law or choice-of-forum provisions, but chose not to do so, and its decision must be respected. *See generally Morgan v. Bank of Waukegan*, 804 F.2d 970, 974 (7th Cir. 1986) ("[O]ur function is to apply the language of the statute as drafted . . . not to rewrite the statute as we might prefer it to be."); *Doe v. City of Los Angeles*, 42 Cal. 4th 531, 545 (2007) ("A court . . . may not rewrite the statute to conform to an assumed intention which does not appear from its language.") (citation and internal quotations omitted).

Arbitrator Townley's Award is not subject to vacatur because section 5000 does not specifically bar *all* parties from adopting another state's forum or law. The U.S. Supreme Court's decision in *Eastern Associated Coal* illustrates the point. There, the Supreme Court held

---

[5] California Labor Code section 5000 states: "No contract, rule, or regulation shall exempt the employer from liability for the compensation fixed by this division[.]" California Labor Code section 2804 states: "Any contract or agreement, express or implied, made by any employee to waive the benefits of this article or any part thereof, is null and void . . . ."

that "a strong public policy against drug use by transportation workers in safety-sensitive

positions" did not preclude the arbitrator's reinstatement of a truck driver who twice had failed

drug tests because the relevant statutory and regulatory provisions did not *specifically* "forbid an

employer to reinstate in a safety-sensitive position an employee who fails a random drug test

once or twice." 531 U.S. at 64-65.

Here, as in *Eastern Associated Coal*, the statute on which Defendants rely does not

*specifically* preclude parties from agreeing to resolve their workers' compensation disputes in a

different state, under its law. Notably, the Kansas Court of Appeals in *Shields v. K.A.T. Transp.*,

53 P. 3d 1242 (Kan. Ct. App. 2002), considered a statute similar to section 5000 "prohibiting []

employees from contracting out of workers compensation protection," *id.* at 1247.[6] The

appellate court rejected arguments that the non-waiver provision constituted an automatic

prohibition against choice-of-law provisions and upheld the parties' agreement to apply Indiana

law to their workers' compensation disputes, reasoning that plaintiff "*did not contract out of*

*protection, but simply chose that of another jurisdiction.*" *Id.* (emphasis added); *see also Welch*

*v. Nightingale Nurses, LLC*, No. 07-08-0305-CV, 2009 WL 1531497, at *4 (Tex. Ct. App. June

2, 2009) (holding that enforcement of a forum selection clause "does not deprive [the plaintiff] of

her day in court; it simply compels her to have her day in court in a forum previously agreed to

by the parties").

Just like the employees in *Shields* and *Welch*, the Players here are not "waiving their right

to seek workers' compensation benefits" (Counterclaim ¶ 36), but rather "are being held to their

contractual promise to apply for the benefits in the forum of the State of Illinois" (Award at 28,

---

[6] The Kansas statute provides that "[a]ny contract in which an employer requires of an employee as a condition of employment that the employee elect not to come within the provisions of the workers compensation act, shall be void." K.S.A. 44-543.

citing *Welch*, 2009 WL 1531497, at *4). In fact, two of the Players already have sought and obtained workers' compensation benefits in Illinois pursuant to Illinois law. (*Id*. at 27 n.23.) Arbitrator Townley correctly held that they should not be permitted also to seek California benefits, contrary to their bargained-for promise to apply Illinois law only. (*Id*. at 27 (recognizing that "the Club negotiated for the 'exclusive jurisdiction' forum of Illinois and would incur additional expense by representing the Club in fora other than Illinois").)

Recently, the California Court of Appeal issued a decision, *1-800-Got Junk? LLC v. Superior Court*, 189 Cal. App. 4th 500 (2010), confirming that a statutory anti-waiver provision does not, by itself, proscribe parties from agreeing to resolve their disputes under the law of another state. In *Got Junk*, a franchisor argued that the California Franchise Relations Act's ("CFRA") anti-waiver provision automatically voided its agreement to apply Washington law to all franchise disputes. The appellate court disagreed, holding that section 20010 of the CFRA, which – similar to California Labor Code section 5000 – states that "'[a]ny condition, stipulation or provision purporting to bind any person to waive compliance with any provision of this law is contrary to public policy and void,'" "*does not categorically prohibit choice of law provisions*." *Id*. at 517-18 (quoting CFRA section 20010) (emphasis added). The *Got Junk* court elaborated:

> [H]ad the Legislature intended the restriction in section 20010 to have the absolute effect suggested by Got Junk, it could have so specified. By way of comparison, the CFRA, at section 20040.5, categorically prohibits *forum selection clauses* in franchise agreements . . . . The Legislature could have written section 20010 to categorically prohibit *choice of law provisions* in franchisee agreements.

*Id.* at 518-19 (original emphasis). So too here, had the California legislature intended the workers' compensation statute's "anti-waiver" provision to "categorically prohibit" choice-of-law or choice-of-forum provisions, it would have said so explicitly. Because it did not, Defendants' reliance on California Labor Code sections 5000 and 2804 is unavailing.

      **(b)**     *Alaska Packers* **fails to support Defendants' efforts to jettison their agreement to resolve their workers' compensation disputes in Illinois under Illinois law.**

In the absence of any statutory support for their argument, Defendants are left to hang their hats on the California and U.S. Supreme Courts' decisions in *Alaska Packers*, a case involving a Mexican resident who agreed, in an employment contract executed in California, to travel to Alaska to can salmon for the season and then return to California to be paid. *Alaska Packers*, 1 Cal. 2d at 252. The California Supreme Court decided that because "the laws of this state enter into and are part of *every contract made here*," *id.* at 260 (emphasis added), the parties' agreement to apply Alaska law to their workers' compensation dispute was invalid. It emphasized that the parties were bound by the workers' compensation law of the state where the contract was entered into, and that such a rule was especially critical in "contracts as the present one, which hire itinerant labor in large groups to be transported out of the state for seasonal work and returned to this state at the end of the season." *Id.* at 261. In that "special class of employment contracts," "the state of hiring has an interest at least as substantial as that of the state in which the temporary and seasonal work is to be performed" because once the employer returns an injured worker to California, *the worker has no means of returning to Alaska to claim compensation and is likely to become a "charge upon" California. Id.* at 261-62 (emphasis added).

The U.S. Supreme Court affirmed the California Supreme Court's decision, holding that because there were significant California contacts – "*the contract of employment was entered into within the state [of California],* the stipulation that the Alaska act should govern was invalid." *Alaska Packers*, 294 U.S. at 539 (emphasis added). Like the California Supreme Court, the U.S. Supreme Court highlighted the "special circumstances" of the case, which gave California a heightened "interest in controlling and regulating this employer-employee

13

relationship" because "[t]he probability is slight that injured workmen, once returned to California, would be able to retrace their steps to Alaska, and there successfully prosecute their claims for compensation." *Id.* at 542. The U.S. Supreme Court added that it was "unnecessary to consider what effect should be given to the California statute" under circumstances, like those here, giving California a "lesser interest" in the case. *Id.* at 543.

The *Alaska Packers* decisions are thus specifically conditioned on the "special circumstances" of the case, which included the fact that the employment contract in that case was entered into in California and the improbability that the employees could obtain benefits in Alaska. Those decisions do *not* restrict parties outside those special circumstances from agreeing to apply the workers' compensation law of another state to their disputes. And in the seventy-five plus years since *Alaska Packers* was decided, no court has embraced Defendants' position that California law precludes parties from agreeing to apply the workers' compensation law of the state where the contract was executed and performed – to the contrary, courts following the *Alaska Packers* decisions have consistently recognized that their reach is limited to employees with substantial California contacts. *See, e.g.*, *Bowen v. Workers' Comp. Appeals Bd.*, 73 Cal. App. 4th 15, 26 (1999) (holding that an employer cannot "deny an employee . . . California workers' compensation benefits *where the employee accepts an offer of employment in California*") (emphasis added); *Benguet Consol. Min. Co. v. Indus. Accident Comm'n*, 36 Cal. App. 2d 158, 164 (1939) ("Both [*Alaska Packers*] courts held that, *because the contract of hire was entered into in this state*, the benefits of the California act were extended to such nonresident alien.") (emphasis added).

Indeed, a federal district court in California expressly rejected the very arguments raised by Defendants here, holding that "California law does not provide an explicit, well-defined, and

14

dominant public policy barring all contractual waivers of California workers' compensation."

*Matthews*, 2011 WL 31068, at *5. The *Matthews* court explained that California law, as

interpreted by the California and U.S. Supreme Courts in *Alaska Packers*,

> has evinced a nuanced analysis in which courts consider[] the
> extent of California's interest in providing workers' compensation.
> *Alaska Packers* explicitly noted that the employee entered into the
> contract in California and had little chance of remedy elsewhere.
> *Alaska Packers*, 294 U.S. at 542. The case also indicated that it
> was unnecessary to consider what effect should be given to § 5000
> if the parties' relationship to California gave California "a lesser
> interest in protecting the employee." *Id.* at 543.

*Id.* Given California's relatively small interest in this case – the Players executed and largely

performed their contracts in Illinois, with approximately three percent of their games played in

California – the *Matthews* decision offers "persuasive authority" for the confirmation of

Arbitrator Townley's Award. *United States ex rel. Lee v. Rowe*, 446 F. Supp. 1039, 1046 n.3

(N.D. Ill. 1978) (finding "support for the decision in the case at bar" from a federal district court

case outside the Circuit with "factual similarity").

### 2. Federal labor law poses no obstacle to the Award.

Defendants next contend that the Award is "contrary to federal labor law," which

prevents unions and employers from bargaining for contract terms that violate "'minimum state

labor standards.'" (Counterclaim ¶¶ 50, 54 (quoting *Metropolitan Life Ins. Co. v. Massachusetts*,

471 U.S. 724, 755 (1985)).) The problem with Defendants' argument lies in its starting

assumption that the Award upholding the parties' choice-of-law and choice-of-forum agreement

"forces [the Players] to waive their unwaivable right to seek benefits under California law or in

California." (*Id.*, ¶ 57.) As explained above, California law does not categorically restrict

parties from voluntarily agreeing to apply the workers' compensation law of a state other than

California. Federal labor law thus poses no obstacle to the Award.

The *Matthews* court rejected the same federal labor law argument, explaining that the player "falsely assume[d]" he "has a right to receive California workers' compensation." *Matthews*, 2011 WL 31068, at *7. Because there is no "policy preventing Matthews from waiving California workers' compensation," "[f]ederal public policy is not a basis for vacating the arbitration award." *Id.* Its well-reasoned decision merits this Court's respect. *Rowe*, 446 F. Supp. at 1046 n.3.

### 3. The U.S. Constitution is no impediment to the Award's enforcement of the parties' choice-of-law and choice-of-forum agreements.

Defendants further insist that the Award runs afoul of the Full Faith and Credit Clause, which prohibits Illinois "from trying to foist its laws upon California." (Counterclaim ¶ 58.) Defendants are again mistaken; the Award is constitutionally sound.

As a threshold matter, neither Illinois nor the Award is "foisting" Illinois law on California – the parties voluntarily chose an Illinois forum and Illinois law for resolution of their workers' compensation disputes. The Full Faith and Credit Clause does not affect the parties' choice-of-forum agreement, but rather "direct[s] that a State, *when acting as the forum for litigation* having multistate aspects or implications, respect the legitimate interests of other States and avoid infringement upon their sovereignty." *Allstate*, 449 U.S. at 322 (Stevens, J., concurring) (emphasis added).

Illinois, the chosen "forum for litigation" here, would not infringe on California's sovereignty by applying its own laws, in keeping with the Award and the parties' agreement. The Full Faith and Credit Clause does *not* "rigidly require the forum State to apply foreign law whenever another State has a valid interest in the litigation. On the contrary, *in view of the fact that the forum State is also a sovereign in its own right, in appropriate cases it may attach paramount importance to its own legitimate interests*." *Allstate*, 449 U.S. at 322-23 (Stevens, J.,

concurring) (emphasis added); *see also Sun Oil Co. v. Wortman*, 486 U.S. 717, 735 (1988) (Brennan, J., concurring) ("The minimum requirements imposed by the Full Faith and Credit Clause are that a forum State should not apply its law unless it has 'a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair.'") (quoting *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 818 (1985)).

Illinois undoubtedly has "legitimate interests" in applying its own law – it is where the contracts between the parties were "executed and performed," where the Bears are located, and where the Players practiced and played most of the time. (Award at 27-28.) In fact, as discussed in section IV.B below, application of California law would violate Illinois' long-standing public policies – a constitutionally unacceptable result. *Nevada v. Hall*, 440 U.S. 410, 422 (1979) ("[T]he Full Faith and Credit Clause does not require a state to apply another State's law in violation of its own legitimate public policy.").

Contrary to what Defendants argue (Counterclaim ¶¶ 59-60), *Alaska Packers* and *Pacific Employers Ins. Co. v. Industrial Acc. Comm'n of California*, 306 U.S. 493 (1939), only confirm that conclusion. In those cases, the Supreme Court declined to apply the Full Faith and Credit Clause to require the forum state to apply another state's law where the forum state had significant contacts with the litigation and substantial interest in applying its own law. *Alaska Packers*, 294 U.S. at 549-50 (holding that under "the special circumstances" of this case, where California's interest outweighed Alaska's, the California court did not overstep constitutional bounds in applying local law); *Pacific Employers*, 306 U.S. at 504 (holding that California was not constrained by the Full Faith and Credit Clause to apply the workers' compensation law of another state in a case involving a worker who was injured in an industrial accident in California

17

and treated for his injuries in California).  Illinois' significant contacts with the case and

substantial interest in applying its own law thus justify confirmation of the Award.  *See*

*Matthews*, 2011 WL 31068, at *7 ("[T]he Full Faith and Credit Clause and the case law do not

evidence an explicit, well-defined, and dominant public policy specifically militating against an

award requiring Matthews to pursue his workers' compensation claim under Tennessee law, if at

all.").

> **B.**  **An Award Ignoring The Parties' Choice Of Illinois Law And An Illinois Forum Would Violate Federal Labor Policy, As Well As Illinois Law And Policy.**

Defendants' arguments that the Award should be vacated also fail because even if some

clearly-defined California or federal policy *had* been violated, such policy would have to be

balanced against competing policies that militate forcefully in favor of the Award's enforcement.

*Eastern Assoc. Coal*, 531 U.S. at 65 (holding that when "expressions of positive law embody

several relevant policies," a court must decide whether the award contradicts "these several

policies, taken together").

First, this Court would have to take into account the federal labor law policy favoring

arbitration and collective bargaining agreements.  "[T]his Nation's longstanding labor policy" of

allowing "employers and employees the freedom through collective bargaining to establish

conditions of employment" commands respect.  *Eastern Assoc. Coal*, 531 U.S. at 65; *Miron*

*Constr. Co., Inc. v. Int'l Union of Operating Eng'rs, Local 139,* 44 F.3d 558, 563 (7th Cir. 1995)

("National labor policy strongly favors the voluntary private arbitration of disputes where

possible.").

Second, Illinois has a strong policy of respecting contracting parties' choice-of-law

agreements.  As the Seventh Circuit has explained:

> Illinois law holds that the law applicable to a contract is the law intended by the parties. When the parties express that intent (such as through a governing law provision), that express intent is generally recognized.

*Smurfit Newsprint Corp. v. Southeast Paper Mfg. Co.*, 368 F.3d 944, 949 (7th Cir. 2004) (citing *Hofeld v. Nationwide Life Ins. Co.* 59 Ill. 2d 522, 529 (1975) ("Generally, the law applicable to a contract is that which the parties intended, assuming such an intent. When that intent is expressed, it should be followed.")).

An exception to that overarching state policy exists only when "(1) the chosen state has 'no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice,' or (2) its application 'would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue.'" *Old Republic Ins. Co. v. Ace Prop. & Casualty Ins. Co.*, 389 Ill. App. 3d 356, 363 (2009) (quoting Restatement (Second) of Conflict of Laws § 187(2), at 561); *Hall v. Sprint Spectrum L.P.*, 376 Ill. App. 3d 822, 825-26 (2007) (same).

Here, there is no question that the chosen state, Illinois, has a "substantial relationship" to the parties to the transaction – the Bears are located in Illinois, and the Players executed and performed their contracts there. *Hall*, 376 Ill. App. 3d at 826 (holding that the chosen state had a "substantial relationship" to the parties because one of the defendants had its principal place of business there).

Turning to the second prong of the Restatement test, even if the application of Illinois law were "contrary to a fundamental policy" of California, *id.* – though as explained above, it is not – California does not have a materially greater interest than Illinois in the determination of this issue. Indeed, Arbitrator Townley specifically found that Illinois has a "materially greater interest" than California (Award at 27-28), and her conclusion is not subject to review, *e.g.*,

*Prostyakov v. Masco Corp.*, 513 F.3d 716, 723 (7th Cir. 2008) ("We repeatedly have stated that we do not – and will not – review arbitral awards for legal or factual error.") (citations omitted).

Illinois' policy favoring the enforcement of choice-of-forum provisions is equally compelling. *See, e.g.*, *Calanca v. D&S Mfg. Co.*, 510 N.E.2d 21, 23-24 (Ill. Ct. App. 1987) (holding that forum selection clauses are "prima facie valid and should be enforced unless the opposing party shows that enforcement would be unreasonable under the circumstances") (cited in Award at 27). Arbitrator Townley upheld the parties' choice-of-forum provision as reasonable and thus valid under Illinois law, relying on Illinois' substantial contacts with the parties and the litigation, including the fact that the Club "negotiated for the 'exclusive jurisdiction' forum of Illinois and would incur additional expense by representing the Club in fora other than Illinois." (Award at 27.) Again, her determination is not reviewable by this Court. *Prostyakov*, 513 F.3d at 723.

## V.      DEFENDANTS' REQUEST FOR DECLARATORY RELIEF SHOULD BE DENIED.

Defendants' final request for a declaratory judgment as to the Players' ability to seek California workers' compensation benefits is nothing more than an impermissible collateral attack on Arbitrator Townley's Award.

First, it is well-established that declaratory relief "should not be granted if a special statutory proceeding has been provided for the determination of particular questions." 10B Wright & Miller, Federal Practice and Procedure § 2758 (3d ed. 1998). There *is* a "special statutory proceeding" for determining whether California law trumps the parties' choice-of-law and choice-of-forum provision: section 301 of the LMRA. While Arbitrator Townley may have been "confined to the interpretation of the CBA and the Players' contracts" (Award at 23, cited in Counterclaim ¶ 69), Defendants can raise their California policy-based challenge in a motion

to vacate under section 301 – and have done just that. What they *cannot* do is avoid section 301's narrow constraints, *e.g.*, *National Wrecking Co.*, 990 F.2d at 960, via an independent claim for declaratory relief, *e.g.*, *Nat'l Football League Players Ass'n v. Office & Prof'l Emps. Int'l Union, Local 2*, Nos. 96-7245, 96-7268, 1997 WL 362761, at *1 (D.C. Cir. May 6, 1997) (holding that because "[t]he appropriate path under the [FAA] is for a dissatisfied party to move to vacate the award after arbitration," summary judgment was "appropriate on appellant's claim for a declaratory judgment to nullify the arbitrator's actions").

Second, the Award "has the same effect under the rules of res judicata as a judgment of a court" and precludes Defendants' declaratory judgment claim. *MACTEC, Inc. v. Gorelick*, 427 F.3d 821, 831 (10th Cir. 2005) (citing Restatement (Second) of Judgments § 84(1) & cmt. b (1980)); *see also IDS Life Ins. Co. v. Royal Alliance Assocs.*, 266 F.3d 645, 651 (7th Cir. 2001) ("[R]es judicata and collateral estoppel usually attach to arbitration awards."). In *MACTEC*, as here, in addition to its application to vacate the arbitration award on public policy grounds, plaintiff sought a declaration that defendant's ("and by implication, the arbitrator's") interpretation of the contract was unlawful. 427 F.3d at 830. The Tenth Circuit held that the declaratory judgment claim was barred by res judicata, reasoning: "'If any party dissatisfied with the award were left free to pursue independent judicial proceedings on the same claim or defenses, arbitration would be substantially worthless.'" *Id.* at 832 (quoting 18B Wright & Miller, Federal Practice and Procedure § 4475.1, p. 509 (2d ed. 1992)). In short, as one federal district court put it: "[A] declaratory judgment by this court would not 'settle' the controversy because the controversy has already been 'settled' by the arbitrator[]." *Nationwide Mut. Ins. Co. v. Flynn*, 704 F. Supp. 592, 594 (E.D. Pa. 1988).

21

## VI.    <u>CONCLUSION</u>

For all of the foregoing reasons, this Court should confirm Arbitrator Townley's Award and deny Defendants' request for declaratory relief.


Dated:  June 30, 2011                              Respectfully submitted,


                                                   /s/ Rex S. Heinke
                                                   Rex S. Heinke *(Pro hac vice* granted*)*
                                                   L. Rachel Helyar *(Pro hac vice* granted*)*
                                                   Johanna R. Shargel *(Pro hac vice* granted*)*
                                                   AKIN GUMP STRAUSS HAUER & FELD LLP
                                                   2029 Century Park East, Suite 2400
                                                   Los Angeles, CA  90067
                                                   Telephone:    310.229.1000
                                                   Facsimile:    310.229.1001

                                                   Elizabeth A. Kaveny – ARDC #6211280
                                                   BURKE WISE MORRISSEY & KAVENY
                                                   161 N. Clark, Suite 2240
                                                   Chicago, IL  60601
                                                   Telephone:    312.580.2040
                                                   Facsimile:    312.580.2041

                                                   *Attorneys for the Chicago Bears Football Club, Inc.*
                                                   *and the National Football League Management*
                                                   *Council*