IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| THE CHICAGO BEARS FOOTBALL CLUB, INC., and NATIONAL FOOTBALL LEAGUE MANAGEMENT COUNSEL, | ) ) ) ) | |
| Plaintiffs, | ) ) | No. 11 C 2668 |
| v. | ) ) ) | |
| MICHAEL HAYNES, JOE ODOM, CAMERON WORRELL and NATIONAL FOOTBALL LEAGUE PLAYERS ASSOCIATION, | ) ) ) ) | |
| Defendants. | | |

## MEMORANDUM OPINION AND ORDER

On April 21, 2011, plaintiffs filed an action pursuant to section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 *et seq.*, to confirm and enforce an arbitration award issued the same day. The award resolved consolidated grievances filed by plaintiffs pursuant to two agreements governing the parties' relationship: the 2006-2012 Collective Bargaining Agreement (the "CBA") and the NFL Players' Contracts (the "Players' Contracts") (collectively, the "Agreements"). Defendants have since filed a motion to vacate the award and to declare certain of their provisions void and unenforceable. For the reasons that follow, I confirm the award and deny defendants' motion in its entirety.

The factual landscape underlying the pending motions is not in dispute. Plaintiffs are the Chicago Bears Football Club (the "Bears"), a National Football League ("NFL") member club located in

Illinois, and the National Football League Management Council (the "NFLMC"), the collective bargaining unit responsible for negotiating player contracts on behalf of all NFL member clubs. Defendants are Michael Haynes, Joe Odom, and Cameron Worrell (the "Players"), NFL players who entered into the Agreements with the Bears between 2003 and 2008, and the National Football League Players Association (the "NFLPA"), the collective bargaining unit responsible for negotiating player contracts on behalf of NFL players, including Haynes, Odom, and Worrell.

In 2009 and 2010, the Players filed claims for workers' compensation benefits with the California Workers' Compensation Appeals Board ("WCAB") seeking benefits under the California Workers' Compensation Act.[1] Plaintiffs claimed, in a grievance procedure established by the Agreements, that the Players violated their individual Contracts by pursuing these claims in California, rather than in Illinois. The NFLPA disagreed, and the matter proceeded to arbitration pursuant to the terms of the Agreements.

On April 21, 2011, Arbitrator Rosemary Townley issued an opinion and award sustaining plaintiffs' grievances. *In re the Arbitration Between The Chicago Bears and the National Football League Management Council and Michael Haynes, et al.* (Apr. 21, 2011)

---

[1] Neither the Award nor the briefs now before me explain why the Players chose to file their claims in California. Defendants do not appear to dispute plaintiffs' statement that "[n]one of the Players alleged that he had sustained any particular injury in California, and the Players practiced and played in Illinois more than in any other state." Pl.'s Mem., 4 (DN 33). On the record before me, the Players' basis for filing claims in California is a mystery.

(Townley, Arb.) ("Award"). Arbitrator Townley construed the language of the Agreements and concluded that they contained both choice-of-law and choice-of-forum provisions, which together expressed the parties' intent that all workers' compensation claims be brought before the Illinois Industrial Commission (now the Illinois Workers' Compensation Commission) and adjudicated pursuant to Illinois law. The arbitrator described her findings as "two-fold," by which she appears to have meant that they were grounded on two independent bases. First, she concluded that the arbitration award in *Tennessee Titans v. Bruce Matthews* (2010) (Sharpe, Arb.) ("*Matthews*"), which determined that the Tennessee choice-of-law provisions in an NFL player's contract prohibited the player from pursing workers' compensation claims under California law, set forth the "law of the shop," and that the judicial confirmation of *Matthews* in *National Football League Players Ass'n v. National Football League Management Council* No. 10CV1671 JLS (WMC), 2011 WL 31068 (S.D. Cal. 2011) ("*Matthews Order*") "raised [*Matthews*] to the level of 'preclusive effect'" with respect to the dispute before her. *Award,* 19. Second, Arbitrator Townley concluded that "even absent the preclusive effect of *Matthews*, the Players breached [the forum selection clause] of their Contracts" by filing workers' compensation claims in California. *Id*. Accordingly, pursuant to her authority under Article IX, Section 8 of the CBA,[2] she ordered

---

[2]The portion of this section that is excerpted in the arbitrator's decision states, "(T)he decision of the arbitrator will constitute full, final and complete disposition of the

the Players to cease and desist from pursuing their workers' compensation claims in California.

Defendants do not dispute that Arbitrator Townley's interpretation of the contract is literally correct, i.e., that on their face, the Agreements require the Players to pursue any workers' compensation claims in Illinois, under Illinois law. They argue, however, that these provisions are void and unenforceable under California law, federal labor law, and the Full Faith and Credit Clause of the Constitution. Plaintiffs, for their part, emphasize the strong presumption under the LMRA in favor of enforcing arbitration awards and insist that none of defendants' arguments overcomes this presumption. Indeed, plaintiffs argue that an award that *failed* to enforce the Agreements' law and forum restrictions would violate federal labor policy and Illinois law.

At the threshold of the parties' competing arguments is a dispute over the applicable standard of review. In general, judicial review of arbitral awards is "extraordinarily narrow." *Dean v. Sullivan*, 118 F.3d 1170, 1171 (7th. Cir. 1997); *see also Chrysler Motors Corp. v. Int'l Union, Allied Indus. Workers of Am.*, 959 F.2d 685, 687 (7th Cir. 1992) ("It is well settled that judicial review of arbitration awards is extremely limited.") Indeed, "as

---

grievance, and will be binding upon the player(s) and Club(s) involved and the parties to this Agreement; provided, however, that the arbitrator will not have the jurisdiction or authority: (a) to add to, subtract from, or alter in any way the provision of this Agreement or any other applicable document; or (b) to grant any remedy other than a money award, an order of reinstatement, suspension without pay, a stay of suspension pending decision, a cease and desist order...." *Award*, at 2.

long as the arbiter's award 'draws its essence from the collective bargaining agreement,' a federal court must enforce the award." *Dean,* 118 F.3d at 1171 (quoting *United Steelworkers of Am. v. Enter. Wheel and Car Corp*., 363 U.S. 593, 597 (1960)). Defendants insist that this standard does not apply in this case, however, and that I am free to examine their arguments without deference to the arbitrator's decision (which they characterize as "fundamentally irrelevant"), because Arbitrator Townley concluded that "any interpretation of state workers' compensation law is to be left to state or other authorities and not to the arbitrator, who is confined to the interpretation of the provisions of the CBA and the Players' Contracts." *Award*, 23.

There is no question that "(a)n arbitrator's authority is limited to the interpretation and application" of the parties' agreement. *Local 15, Intern. Broth. of Elec. Workers v. Exelon Corp*., 495 F.3d 779, 784 (7th Cir. 2007). And as the court observed in *Miami Dolphins, Ltd. v. Newson*,---F. Supp. 2d---, 2011 WL 1671631, at *4 (W.D. Pa. 2011), various arbitrators construing the CBA and individual NFL players' contracts have acknowledged their "limited roles as 'contract readers' in providing an interpretation of contractual language regarding workers' compensation benefits." But these observations do not eviscerate the general rule that once parties have agreed to submit to final and binding arbitration, they must abide by the arbitrator's award. That an arbitrator declines to

resolve issues she construes as outside the scope of her authority does not generally open her decision to *de novo* review in federal court.

Nevertheless, *de novo* review is appropriate with respect to the narrow claim defendants raise here, which is that the arbitral award is contrary to public policy. *See Chrysler Motors,* 959 F.2d at 687 ("While the merits of a grievance are for an arbitrator, the question of public policy is wholly independent from the collective bargaining agreement and is ultimately one for the courts.... The public policy doctrine allows this court to decide *de novo* whether [the award at issue] violates public policy.") Accordingly, I may consider *de novo* defendants' argument that public policy prohibits enforcement of the Award. But while I review this narrow issue without deference, I am bound to accept (and, indeed, defendants have raised no challenge to) the Arbitrator's interpretation of the Agreements, as well as her legal and factual conclusions. *ANR Advance Transp. Co. v. International Broth. of Teamsters, Local 710*, 153 F.3d 774, 778 ("our role is not to substitute our judgment for the arbitrator or even to determine that the arbitration was legally or factually in error.") Moreover, the standard for vacating an arbitration award on public policy grounds is high: defendants must demonstrate that the Award is contrary to "well defined and dominant" public policy, which must be "ascertained by reference to the laws and legal precedents and not from general considerations of

6

supposed public interests." *W.R. Grace & Co. v. Local Union 759, International Union of United Rubber*, 461 U.S. 757, 766 (1983) (internal quotation and citation omitted).

Arbitrator Townley concluded that the Agreements were governed by Illinois law, and she further concluded that Illinois law permitted the choice of law and forum clauses at issue. Defendants' lead argument in this court, as it was in the arbitration, is that the forum restrictions in the Agreements violate California's public policy as codified in California Labor Code Sections 2804 and 5000, which prohibit "any contract or agreement" that would "waive the benefits of this article or any part thereof," and as construed in cases beginning with *Alaska Packers' Ass'n v. Indus. Accident Comm'n of Cal.*, 34 P. 2d 716 (Cal. 1934), *aff'd,* 294 U.S. 532 (1935) (declining to enforce Alaska choice-of-law and -forum provisions in contract formed in California, and allowing California court to apply California's workers' compensation statute). But although both sides devote numerous pages to the question of whether California does, or does not, have an "explicit," "well-defined," and "dominant" public policy that is inconsistent with the Award, neither side addresses what strikes me as an obvious threshold question: *why is California's public policy relevant at all*?

Defendants do not, and indeed, cannot, dispute Arbitrator Townley's conclusions that *Illinois* law governs the formation and construction of the Agreements; that the Bears are located in

7

*Illinois*; that the Players executed and substantially performed the Agreements in *Illinois*; and that the parties negotiated for exclusive *Illinois* choice-of-law and choice-of-forum provisions. Nor can defendants dispute the arbitrator's conclusion that the Award is consistent with *Illinois* law (and, presumably, its public policy), which is the state she further found to have the "materially greater interest" in the Players' claims. In view of these unassailable findings, I am left to wonder why, indeed, we are concerned with the public policy of *California.*

The authority on which defendants rely does not answer this question. Indeed, in each of the cases or arbitral decisions declining to enforce a contractual provision that waived an employee's right to pursue a claim under California's workers' compensation statute, the basis for considering California's public policy was explicit. In *Alaska Packers'*, defendants' leading case, the California Supreme Court held that California could apply its own workers' compensation statute to an employee *hired in California*, despite the fact that he was injured in Alaska and that the contract of employment contained an Alaska choice-of-law provision. *Alaska Packers' Ass'n. v. Industrial Accident Comm'n of California*, 34 P. 2d 716 (Cal. 1934). The court emphasized "the creation of the [employment] status under the laws of this state," and California's legislative directive that the workers' compensation statute "shall apply to injuries received abroad *where*

8

*the contract of hire is made within the state*" as among the factors supporting its conclusion. *Id.*, 720 (emphasis added). Affirming the California Supreme Court's decision, the Supreme Court of the United States likewise focused on the fact that the employment relationship was created within California. *Alaska Packers Ass'n. v. Industrial Accident Comm'n of California*, 294 U.S. 532, 542-43. These cases do not support the proposition that an agreement created under and governed exclusively by Illinois law must also conform to the public policy of California.

Nor do defendants' authorities addressing the public policy of other states support this proposition. Indeed, in *P.I. & I. Motor Exp., Inc.,/For U, LLC v. Indus. Comm'n*, 857 N.E. 2d 784 (Ill. App. Ct. 2006), the court declined to enforce an Ohio choice-of-law provision in an employment contract executed in Illinois, noting that "[a]s the state where the employment contract was entered into, Illinois has a legitimate concern over the employer-employee relationship." This holding is consistent with *Alaska Packers'*, and it underscores the propriety of conducting the enforceability analysis through the lens of Illinois law, not California law. *See also Pro-Football, Inc. v. Tupa*, 14 A.3d 678, 683 (Md. Ct. App. 2011) (applying Maryland law to invalidate Virginia choice-of-forum provision after concluding that employee was "regularly employed in Maryland" by a Maryland corporation and worked more regularly in Maryland than in any other jurisdiction, including Virginia).

9

Defendants' remaining authorities are equally unpersuasive on this issue.[3]

In short, because defendants have not established any basis for concluding that the Agreements must conform to the public policy of California, their argument that the Award should be vacated as contrary to that public policy rings hollow, particularly in view of the Arbitrator's affirmative conclusion that the provisions at issue are consistent with governing Illinois law.

Defendants' next argument--that the Award violates federal labor policy--fares no better. Defendants first argue that "federal labor law prohibits an employee's workers' compensation rights

---

[3]Defendants cite, *inter alia*, *Hines v. Indus. Acc. Comm'n*, 182 Cal. 359 (1920) (California law prohibits an employer aware of an employee's preexisting medical condition from requiring the employee to release employer from claims relating to that condition); *Bowen v. Workers' Comp. Appeals Bd.*, 73 Cal. App. 4th 15 (Cal. Dist. Ct. App. 1999) (employee cannot waive protection under California's worker's compensation regime where contract was formed in California and employee was resident of California); *Booker v. Cincinnati Bengals, Inc.*, Case No. ANA0401410, Slip Op. (WCAB 2009) (examining jurisdiction of California Workers' Compensation Board in view of competing state workers' compensation regimes and in the absence of explicit contractual law/forum restrictions); *Miami Dolphins, Ltd. . Newson,* ---F. Supp. 2d---, 2011 WL 1671631 (declining to hold that state workers' compensation claims were "preempted" by contract while arbitration to interpret the contract was ongoing); *Cincinnati Bengals, Inc. v. Abdullah*, No. 1:09-cv-738, 2010 WL 1857270 (S.D. Ohio 2010) (noting, without analysis, that players "apparently have a right" to bring workers' compensation claims in California, and concluding that they could pursue these claims while arbitration to construe their employment contracts was pending); and *McIlvaine Trucking, Inc. v. W.C.A.B.* (States), 810 A.2d 1280 (Pa. 2002) (affirming the jurisdiction of Pennsylvania's workers' compensation board to hear claims of an employee whose contract required regular work in Pennsylvania, notwithstanding West Virginia choice-of-law provision in employment contract).

created by the State of California to be overridden by the [Agreements]." Def.'s Mem., 14-15 (DN 35) (citing *Livadas v. Bradshaw*, 512 U.S. 107 (1994) for the proposition that "a collective bargaining agreement cannot supplant state employee benefits law because principles of federal pre-emption 'cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law.'") Defendants next argue that the Award violates federal labor law because "a union and employer may *not* contract to take away from employees state law benefits that improve employees' health, safety or welfare." Def.'s Mem., 15 (original emphasis). And in their opposition to plaintiffs' motion, defendants argue in a similar vein that "an arbitration award that requires an employee to forfeit rights he would otherwise be permitted to exercise under state workers' compensation laws is contrary to law and must be vacated." Def.'s Opp., 12 (citing *United Paperworkers Intern. Union v. Allied Paper, Inc*., Civ. No. D 86-425, 1987 WL 33822, at *3-4 (N.D. Ind. May 29, 1987)).

All of these related arguments fail on their premise in view, once again, of Arbitrator Townley's conclusion that the parties' employment relationship was created under, and is governed by, Illinois law. As defendants' own authorities emphasize, the rights and duties established by state workers' compensation regimes "aris[e] from the employer-employee relationship and are imposed by the law as incidents to that status." *Alaska Packers' Ass'n v.*

11

*Industrial Accident Comm'n of California*, 34 P. 2d 716, 719 (Cal. 1934). The Players' right to seek workers' compensation benefits does not exist independently of the employment relationship, but instead came into being as a product of that relationship. Accordingly, the Players' contractual agreement to exercise this right, once created, in Illinois, under Illinois law, did not "override" or "take away" some preexisting right the Players were "otherwise permitted to exercise."[4] Furthermore, Arbitrator Townley explicitly held that because the forum selection clause did not effect a *waiver* of the Players' right to claim workers' compensation benefits (requiring only that they assert this right in a particular forum), "there is no deprivation of 'minimum [state law] standards.'" Award, 28.

None of the cases defendants cite is to the contrary. In *Livadas*, the Court held that the LMRA "cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law." 512 U.S. at 123. In that case, the Court held that a California worker's claim pursuant to a California state law requiring employers to pay, immediately, all unpaid wages of a discharged employee was not preempted by § 301 of the LMRA merely because the worker was covered by a collective bargaining agreement requiring arbitration of all labor disputes. But the question here

---

[4]Moreover, the arbitrator concluded that the forum restrictions were individually bargained for, further undermining any argument that the "union" contracted to "take away" any right the Players otherwise would have had. Award, 27.

is not one of preemption, since the Agreements do not purport to supplant state law. In fact, they expressly confirm the applicability of the workers' compensation laws of *Illinois*--the state under whose laws the employment relationship entitling the Players to workers' compensation benefits was created. Nothing in *Livadas,* or in any of the other preemption cases defendants cite without discussion--*Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724 (1985), *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, and *Lingle v. Norge Div. Of Magic Chef, Inc.*, 486 U.S. 399 (1988)--evinces an "explicit," "well-defined," and "dominant" federal labor policy requiring that the workers' compensation regime of a state foreign to the employment relationship must prevail over those of the state in which that relationship was formed, and which, moreover, was explicitly selected by the parties.

Defendants' final argument--that the Full Faith and Credit Clause of the Constitution prohibits the Agreements' law and forum restrictions--requires little discussion. Defendants again rely heavily on *Alaska Packers'*, framing the issue as whether the Agreements unconstitutionally "foist" the law of Illinois upon California. The question here is not, however, whether the Agreements "foist" the laws of a foreign state on California. It is whether the Award's enforcement of the Agreements' Illinois law and forum restrictions violates the Constitution. It clearly does not, as cases including *Alaska Packers* itself demonstrate.

In *Alaska Packers,* the Court declined to interpret the Full Faith and Credit Clause to require that California apply Alaska law, rather than its own. *Alaska Packers*, 294 U.S. at 549-50. So, too, in this case, Illinois--the state, once again, whose law governs the totality of the parties' employment relationship--may constitutionally apply its own law in view of its "legitimate interests" in the case, which the arbitrator determined were "materially greater" than California's. Award, 27. *See also Allstate Ins. Co. v. Hague*, 449 U.S. 302, 313 ("for a State's substantive law to be selected in a constitutionally permissible manner, that State must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair." The arbitrator did not defy the Constitution by conducting the enforceability analysis through the lens of Illinois law.

For the foregoing reasons, plaintiffs' motion to enforce the Award is granted, and defendants' motion to vacate the Award and to declare the law and forum restrictions of the Agreements void and unenforceable is denied.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: September 13, 2011